**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

In re:

John Roderick McKowen,

    Debtor.

Case No. 25-16665 KHT
Chapter 11

**ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE**

THIS MATTER came before the Court following a hearing on the adequacy of information contained in the Amended Disclosure Statement (docket ##96, 108), filed by Debtor John Roderick McKowen ("Mr. McKowen"); the Objections thereto, filed by Tung Chan, Securities Commissioner for the State of Colorado (the "Commissioner") (docket #101), Blue Yellow, LLC (docket ##102, 103), and the U.S. Trustee (docket #104); and the Replies thereto (docket ##105, 106, 107), filed by Mr. McKowen.[1] The Court has reviewed the pleadings and the file, is advised in the premises, and hereby finds and concludes as follows:

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

Mr. McKowen and Wayne Harding ("Mr. Harding") were principals of several entities related through a complex business structure, with parent company Two Rivers Water and Farming Company ("Two Rivers"); its subsidiary and affiliated companies including Two Rivers Farms F-1, Inc. and TR Capital Partners, LLC. ("TR Capital," owned in part by Two Rivers); and their subsidiaries and affiliated companies including Two Rivers Farms F-2, Inc. ("F-2," a subsidiary of Two Rivers Farms F-1, Inc.) and the Orlando Reservoir No. 2 Company, LLC ("Orlando," owned in part by TR Capital). Orlando owned real property and water rights primarily located in Huerfano County, Colorado. F-2 acquired interests in Huerfano County real property and water rights from Orlando and from others.

In approximately 2014, Messrs. McKowen and Harding decided to expand into the marijuana industry. Through existing and newly formed entities, including GrowCo, Inc. (a subsidiary of Two Rivers) and GrowCo Partners entities (GrowCo Partners 1, LLC, GrowCo Partners 2, LLC, etc., all subsidiaries of GrowCo, Inc.), over $19 million was raised from investors, through private equity offerings (the "GrowCo Fundraising"). In

---

[1] Shortly before this Order was entered, Mr. McKowen filed another pleading, entitled *Notice of Distribution of Beneficiary Interests, Supplement to Debtor's Second Amended Disclosure Statement (dkt. 108) under 11 U.S.C. § 1125, and request for Coordination with any Limited Dismissal* (the "Notice," docket #121). The Court considered the statements made in the Notice, and those statements do not change the Court's analysis. The Court will not grant the relief requested in the Notice.

[2] Except as otherwise indicated, the following facts are not subject to genuine dispute.

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

connection with the GrowCo Fundraising, Orlando and F-2 executed two Deeds of Trust: one recorded in Huerfano County at reception number 404224 (the "404224 Deed of Trust"), in favor of GrowCo Partners 1, LLC and approximately 101 persons identified as beneficiaries, and one recorded in Huerfano County at reception number 404225 (the "404225 Deed of Trust"), in favor of GrowCo, Inc. and approximately 18 persons identified as beneficiaries.

By 2018, various parties alleged the funds raised in the GrowCo Fundraising had been misappropriated. Mr. McKowen, who had resigned from his Two Rivers leadership positions, blamed Two Rivers and TR Capital. Greg Harrington ("Mr. Harrington"), who later assumed leadership positions at Two Rivers and its subsidiaries and affiliates, blamed Messrs. McKowen and Harding.

In 2019, John Paulson, who had invested through the GrowCo Fundraising, filed a lawsuit, which proceeded in the U.S. District Court for the District of Colorado, case number 1:19-cv-02639-PAB-NRN (the "Paulson Case"), on behalf of himself and a class of others who had made investments through the GrowCo Fundraising, against defendants including Two Rivers and Messrs. McKowen and Harding, alleging violations of the Colorado Securities Act, negligence, and negligent misrepresentations and omissions. The Paulson Case parties reached a Settlement, which was executed by Mr. Paulson, Mr. McKowen, Mr. Harding, and Two Rivers through Mr. Harrington. Pursuant to the Settlement, insurance proceeds were to be distributed to members of the class, which was defined as "all persons or entities that currently hold claims based on securities in GrowCo, and purchased or otherwise acquired the securities through Offerings during the period of October 2014 through December 2017 . . . and suffered Alleged Losses as defined above." Settlement Agreement at 5 (docket #180 in the Paulson Case). Although the class did not include Mr. McKowen, it did include persons or entities who had assigned their securities to VitaNova Partners, LLC ("VitaNova"), a company Mr. McKowen formed and owned. As part of the Settlement, the parties released any and all claims that were or could have been asserted in the Paulson Case, except "any claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities . . . ." Settlement Agreement at 9.[3]

Meanwhile, in 2021, the Commissioner filed a Complaint against multiple defendants, including Two Rivers, TR Capital, Mr. Harding, and Mr. McKowen, in the City and County of Denver, Colorado District Court (the "State Court"), case number 21CV33922 (the "State Court Case"), asserting the defendants violated the Colorado Securities Act (the "CSA"), Colo. Rev. Stat. § 11-51-101 *et seq.*, in connection with the GrowCo Fundraising.

In 2023, in the State Court Case, Two Rivers and TR Capital, through Mr. Harrington, entered into a Stipulation with the Commissioner. In the Stipulation, the

---

[3] Mr. McKowen argues the Settlement released claims that could have been brought by governmental agencies, including the Commissioner. But, no governmental agency was a party to the Paulson Case, nor did any governmental agency sign the Settlement. Mr. McKowen has not shown how the Settlement would bind an entity that was neither a party to the Paulson Case nor a member of the defined class.

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

two companies admitted they, through prior management (Messrs. McKowen and Harding), made material misrepresentations and omissions to investors in connection with the GrowCo Fundraising. The companies agreed to injunctive relief prohibiting them from making private offerings within or from the State of Colorado for ten years. The companies further agreed to pay $2,000,000 from the proceeds of any sale of the companies' property. The companies agreed to place F-2 and Orlando in "Chapter 5 Bankruptcy" to avoid the Deeds of Trust granted in connection with the GrowCo Fundraising, sell their property interests, and distribute the sales proceeds equitably.[4]

As proposed in the Stipulation, F-2 and Orlando subsequently filed bankruptcy petitions under Chapter 11, Subchapter V,[5] and filed adversary proceedings attempting to avoid the Deeds of Trust.[6] Mr. McKowen sought several forms of relief, including a stay of the bankruptcy cases, relief from stay, and dismissal of the bankruptcy cases. The Court denied each request for relief at the time. But, after each debtor's counsel withdrew, eliminating any possibility of successful reorganization, the Court dismissed the bankruptcy cases and adversary proceedings.

On August 16, 2024, Mr. McKowen filed an individual bankruptcy petition under Chapter 11, Subchapter V, which was assigned case no. 24-14758-KHT. The case was dismissed by order entered September 6, 2024. While his case was pending, the Court granted the Commissioner's request for a "Comfort Order" providing the automatic stay exception set forth in 11 U.S.C. § 362(b)(4) applied to the State Court Case, and it could go forward in the State Court.

The State Court Case proceeded to trial against the two remaining defendants, Messrs. McKowen and Harding.[7] On July 9, 2025, the State Court entered its Findings of Fact, Conclusions of Law, and Judgment (the "State Court Judgment"), concluding as follows:

---

[4] Mr. McKowen argues the Stipulation is invalid because Mr. Harrington did not have authority to enter into it. The validity of the Stipulation is not before this Court, and the Court makes no findings on that issue.

[5] Orlando's case, no. 23-13178-KHT, was filed July 19, 2023, and dismissed April 15, 2025. F-2's case, no. 23-15627-KHT, was filed December 6, 2023, and dismissed April 15, 2025. No Chapter 11 plans were confirmed, and no assets were sold during the pendency of the bankruptcy cases.

[6] F-2 filed three adversary proceedings seeking to avoid deeds of trust: no. 24-01108-KHT, which sought to avoid a Deed of Trust executed prior to the GrowCo Fundraising, asserting the underlying obligation had been released; no. 24-01111-KHT, which sought to avoid the 404224 Deed of Trust as a fraudulent transfer; and 24-01112-KHT, which sought to avoid the 404225 Deed of Trust as a fraudulent transfer. Each adversary proceeding was dismissed April 16, 2025. The Court did not determine the validity of any deed of trust prior to the dismissal of each adversary proceeding.

[7] Counsel for GrowCo, Inc., GrowCo Partners 1, LLC, GrowCo Partners 2, LLC, GCP Super Units, LLC, VitaNova Partners, LLC, VitaNova Colorado, LLC, VitaNova, LLC, McGrow, LLC, MCG, LLC, GCO Land, LLC, and VitaNova, Inc., was allowed to withdraw, and the State Court subsequently entered default against those entities. Other individual and corporate defendants (including Two Rivers, as set forth above) entered into stipulations with the Commissioner resolving the claims against them.

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

The Court concludes the Commissioner has proven the following three claims by a preponderance of the evidence: (1) McKowen and Harding violated § 11-51-501(1)(a), (b), and (c) of the CSA by selling securities in a scheme to defraud investors, with untrue statements of material fact or omissions to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading, and engaged in acts, practices, or course of business that operated as a fraud on investors; (2) GrowCo and its related entities violated § 11-51-401 and § 11-51-402 of the CSA by using unlicensed sales representatives to offer and sell its securities without a lawful exemption; and (3) McKowen and Harding violated § 11-51-308(1)(p) of the CSA by not filing a notification of exemption with the Commissioner, and paying the required fee.

The Court hereby ORDERS as follows: (1) Defendants McKowen and Harding are enjoined from any participation in private securities transactions in or from the state of Colorado for twenty (20) years from the date of this Order; and (2) judgment in the amount of $16,578,690.33 is entered against Defendants McKowen; Harding; GrowCo, Inc.; GrowCo Partners 1, LLC; GrowCo Partners 2, LLC; GCP Super Units, LLC; VitaNova Partners, LLC; VitaNova Colorado, LLC; VitaNova, LLC; VitaNova, Inc.; McGrow, LLC; MCG, LLC; and GCO Land, LLC. The judgment is joint and several among all of these defendants.

State Court Judgment (Exhibit A to docket #74), at 112. Mr. McKowen appealed the State Court Judgment to the Colorado Court of Appeals, case no. 2025CA1513. The appeal is currently stayed at Mr. McKowen's request. But, the State Court Judgment is not stayed, and the injunction remains effective against Mr. McKowen.

Mr. McKowen filed the above-captioned bankruptcy case on October 14, 2025. His Schedules, filed under penalty of perjury, listed among his assets real property and water rights in Pueblo, Huerfano, and El Paso Counties. Those real property and water rights interests were not owned by Mr. McKowen, individually, but instead were owned by entities Mr. McKowen and/or Mr. Harding controlled at one time, including F-2 and Orlando. Other than his interests in businesses he formed and in potential litigation claims (his own or his businesses'), Mr. McKowen had few assets. He also had few creditors. Mr. McKowen's Schedules listed twelve creditors, as follows: the Commissioner, based on the State Court Judgment, listed as a secured creditor;[8] Blue Yellow, LLC, which had made a loan to Mr. McKowen and/or one of his businesses, listed as a secured creditor;[9] GM Financial, which financed Mr. McKowen's car, listed as a secured creditor; the IRS, listed as an unsecured creditor; four credit card issuers, listed as unsecured creditors; the holder of a home equity line of credit on his former residence, listed as an unsecured creditor; and the treasurers of Pueblo, Huerfano, and El Paso Counties, listed as

---

[8] This appears to be an error and was later corrected by amendment.

[9] This appears to be an error and was later corrected by amendment.

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

unsecured creditors.

On December 8, 2025, Mr. McKowen filed a Chapter 11 Plan of Reorganization (the "December 8 Plan," docket #38) and a Disclosure Statement (docket #39). It provides the following plan summary: "The Plan restores and enforces financial assets, implements structured financing, resolves claims under statutory priorities, and reestablishes the Debtor's Early-Stage Private Equity Business." December 8 Plan at 1. It further provides the following description of assets of Mr. McKowen's estate: "Estate assets include deed-of-trust rights, equity interests, capital accounts, notes, warrants, consulting-income rights, and claims for diversion, impairment, or governance failures." Neither the December 8 Plan nor its accompanying Disclosure Statement contains specific details, such as the value of the assets to be collected, how the assets would be collected, who or what entity would do the asset collection, and what risks would be involved. Neither the December 8 Plan nor its accompanying Disclosure Statement states the real property and water rights interests listed on Mr. McKowen's Schedule A/B were not owned by Mr. McKowen, individually, but were owned by other entities, including F-2 and Orlando.

On December 10, Mr. McKowen filed Amended Schedules, again signed under penalty of perjury (docket #40). The Amended Schedules removed the real property and water rights in Pueblo, Huerfano, and El Paso Counties Mr. McKowen had previously listed, changing the answer to the question "Do you own or have any legal or equitable interest in any residence, building, land, or similar property?" to "No." In response to the question asking for a listing of "any financial assets you did not already list," Mr. McKowen stated: "Deed of Trust No. 404224 recorded in Huerfano County; value unknown" and "Deed of Trust No. 404225 recorded in Huerfano County; value unknown."

On December 12 (docket #44), the Court set a hearing on the adequacy of information contained in the Disclosure Statement, to be held January 28, 2026.

On January 13, 2026, Mr. McKowen filed a Supplement to Disclosure Statement (the "Disclosure Statement Supplement," docket #60). In the Disclosure Statement Supplement, Mr. McKowen first disclosed the intent to issue "Plan Bonds," described as follows:

> **Collateral Ownership and Perfection.** The collateral securing the Plan Bonds consists of two properties currently owned by VetaNova Inc.[10] and incorporated into the Plan's collateral platform. The Debtor holds an approximately thirty-four percent (34%) equity interest in VetaNova Inc. As part of the Round A financing and implementation milestones, the Debtor will undertake actions necessary to perfect and document title, recording, and lien posture so that the ownership record and the security package are fully perfected of record. These steps strengthen and evidence the collateral position and do not alter current ownership of the properties.

---

[10] The Disclosure Statement Supplement refers to "VetaNova." Later-filed documents refer to VētaNova. The Court has copied the spelling of each as set forth in the relevant document.

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

. . . .

> **Plan Bond Characteristics.** The Plan Bonds are 6% Secured Convertible Bonds intended to be issued by VetaNova Inc. pursuant to and under the Plan following confirmation, in three financing rounds capped at $2,000,000 for Round A, $3,000,000 for Round B, and $5,000,000 for Round C, with no minimum funding requirement and with qualified proceeds accepted when received. The Plan Bonds are secured by the Plan collateral package consisting primarily of two properties currently owned by VetaNova Inc., in which the Debtor holds an approximately thirty-four percent (34%) equity interest, with lien priority to be established and perfected through the Round A title, recording, and lien-perfection steps described in this Supplement. The Plan Bonds include a conversion feature permitting bondholders, at their election and on the terms set forth in the definitive Bond Documents, to convert outstanding principal and accrued interest into equity securities of VetaNova, thereby allowing bondholders to transition from a secured creditor position to an equity ownership position aligned with VetaNova's post-confirmation capitalization and business strategy. The Plan Bonds are offered exclusively to the legacy GrowCo-related investor cohort and, together with any securities issued upon conversion, are intended to qualify for exemption from Securities Act registration under 11 U.S.C. § 1145 without reliance on Regulation D, Rule 506, or any "accredited investor" framework.

Disclosure Statement Supplement at 2-3. Attached as Exhibit B was a Draft Term Sheet for 6% Secured Convertible Bonds to be issued by VetaNova Inc., a Nevada Corporation, purportedly pursuant to the December 8 Plan, which does not mention Plan Bonds.

Objections to the adequacy of information contained in the Disclosure Statement and Disclosure Statement Supplement were filed by the Commissioner (docket #74), the U.S. Trustee (docket #77), and Blue Yellow, LLC (docket #78). A common objection was that Mr. McKowen appeared to conflate his assets and liabilities with those of his entities, such as GrowCo and VetaNova. Assets of GrowCo or VetaNova belong to those entities, not to Mr. McKowen personally. Those who invest or invested in GrowCo or VetaNova may be owners or creditors of those entities, but that does not make them creditors of Mr. McKowen personally, a fact Mr. McKowen seemed to acknowledge when he listed so few creditors on his schedules, which he signed under penalty of perjury.

Another common objection noted Mr. McKowen was prohibited from any participation in private securities transactions in or from the state of Colorado. Mr. McKowen filed a response to the objections (docket #79), stating: "the Plan Bonds and any related securities will not be offered or sold in Colorado, and no private placement transaction will occur in or from Colorado."

On January 28, the Court held a hearing on the adequacy of information contained in the Disclosure Statement and Disclosure Statement Supplement. At that hearing, the

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

parties and the Court discussed multiple inaccuracies and omissions in the documents Mr. McKowen had filed with the Court. The Court required Mr. McKowen to file amended/corrected versions of his monthly operating reports, amended schedules and statement of financial affairs, and an amended disclosure statement. Unbeknownst to anyone at the time, the Court's recording equipment failed to save a record of the January 28 hearing. By Order entered February 3 (docket #82), the Court vacated the deadlines previously set and set a new hearing to be held February 12. On that date, the Court held a hearing and reset deadlines for Mr. McKowen to file amended/corrected versions of his monthly operating reports, amended schedules and statement of financial affairs, and an amended disclosure statement. The Court set April 6 as the date by which objections must be filed to the amended disclosure statement and further set a hearing on the adequacy of information in the amended disclosure statement, to take place April 14 (docket ##84, 85).

On March 2, Mr. McKowen filed an Amended Schedule A/B (docket #88), again signed under penalty of perjury, in which he checked "yes" to the question of "Do you own or have any legal or equitable interest in any residence, building, land, or similar property?" He listed the following:

- Parcels of real property located in Avondale (Pueblo County), held in the names of GrowCo Partners 1, LLC, GrowCo Partners 2, LLC, and VetaNova, Inc. Mr. McKowen stated he did not "presently hold a recorded fee title" to the Avondale property.
- Real Property located in Huerfano County, presumably owned by F-2 and/or Orlando.[11] Mr. McKowen stated he did not "presently hold recorded fee title" to the property and water rights. He set forth the following "chain of title" to support his claim of ownership:
  - The 404224 Deed of Trust listed certain beneficiaries (GrowCo Partners 1, LLC and approximately 101 persons identified as beneficiaries);
  - The 404224 Deed of Trust beneficiary interests were "held by GrowCo Partners 1, LLC and subsequently transferred in connection with restructuring transactions involving VitaNova Partners, LLC."
  - Upon dissolution of VitaNova Partners, LLC, "the relevant beneficiary interests were distributed in-kind to Debtor."
- Various Lots in El Paso and Pueblo County "historically held or liquidated through Two Rivers and related entities, including TR El Paso Land, LLC," for which Mr. McKowen was unable to list parcel numbers or owners of record title.

Amended Schedule A/B (docket #88), at 27-29. Mr. McKowen also filed an Amended Schedule D and Schedule E/F (docket #89), listing one secured creditor: GM Financial, which financed Mr. McKowen's car, and eight unsecured creditors: the Commissioner, Blue Yellow, LLC, the IRS, and five credit card issuers.

---

[11] Mr. McKowen did not disclose the name of the entity or entities holding title to the property.

7

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

On March 23, Mr. McKowen filed a Combined Disclosure Statement and Chapter 11 Plan of Reorganization (the "Amended Disclosure Statement," docket #95, as corrected by docket #96), in which he explained the Plan Mechanism as follows:

> The Plan's primary value-creation mechanism is a reverse merger between VētaNova and a qualified greenhouse development partner (subject to negotiation and execution of definitive agreements), following the corporate combination model the Debtor successfully executed in the Navidec/BPZ and NFS transactions that produced approximately $98.4 million of value from $7.23 million of invested capital. The Partner brings operating personnel, expertise, and capital formation authority; VētaNova contributes its greenhouse asset platform. All post-merger capital raising is the Partner's independent corporate action – not a securities offering by VētaNova or the Debtor. In parallel, the VētaNova Licensee Model projects a national rollout of licensed 5-acre plug-and-play CEA facilities: a $250,000 upfront licensing fee plus 5% royalty structure generates approximately $1.07 million in annual EBITDA per licensee by Year 5 and projects VētaNova reaching approximately $20.5 million in corporate net income by Year 5 across 90 cumulative licensees, scaling to $314.8 million in cumulative 10-year net income across 320 licensees. Both programs are funded by their own commercial revenues and are independent of any litigation outcome. The Plan contemplates initial capital deployment in three sequential tranches totaling $10 million to restore public trading status, perfect title, and complete site development plans.

Amended Disclosure Statement ¶ 3 (docket #96 at 8-9). The Amended Disclosure Statement did not identify the Partner that would issue the securities to be reverse-merged into VētaNova, nor has Mr. McKowen subsequently provided this Court or his creditors any further information about the Partner.

The Amended Disclosure Statement describes Mr. McKowen's assets as follows:

> 111.   The Debtor's assets consist primarily of rights and interests arising from his securities positions, equity interests, and enforcement rights connected to the GrowCo enterprise and related entities. The Debtor's Second Amended Schedule A/B (Dkt. 88, filed March 2, 2026) reports total scheduled assets of approximately $1,198,939,465, consisting primarily of litigation claims and real property interests. The principal categories of estate assets are described below.

> 112.   GrowCo Securities and Collateral Rights. The Debtor holds interests in GrowCo securities and related collateral instruments, including promissory notes and deeds of trust securing investor obligations. The federal Paulson Complete Bar Order (Civil Action No. 19-cv-02639-PAB-NRN, Final Order entered March 16, 2023) expressly preserved claims for

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

collection of amounts due under the GrowCo securities and enforcement of the promissory notes and deeds of trust securing those obligations, including enforcement actions in connection with the GrowCo bankruptcy proceedings. Specifically, the Settlement Agreement's definition of "Released Claims" expressly excludes claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities. The Complete Bar Order likewise expressly carves out these collection rights from its bar. These preserved enforcement rights constitute property of the estate and are subject to administration in this Chapter 11 case. The VētaNova Reorganization Ledger (Exhibit 2) documents that $15,809,451 – 77.36% of total GrowCo capital of $20,436,405 – was exchanged into VētaNova Inc. equity. The investors who made that exchange are the beneficial constituency whose interests VētaNova represents. The collateral rights underlying their original GrowCo securities, expressly preserved by the Paulson settlement, are among the estate's most significant enforcement assets.

113.   VētaNova Inc. Equity Interest. On June 30, 2022, VētaNova had 466,971,489 shares of common stock outstanding (pre-split) as reflected in the Certified Shareholder List issued by Olde Monmouth Stock Transfer (the "Olde Monmouth List"). Following the 60-for-1 reverse stock split approved by shareholders on May 24, 2022, the post-split total was 7,782,858 shares. No additional shares were issued. Shares previously held by five entities Two Rivers Water & Farming Company, GrowCo Partners 1, LLC, GrowCo Partners 2, LLC, GrowCo, Inc., and VitaNova Partners, LLC (totaling 2,519,484 post-split shares) – were stripped from those entities and redistributed to the four shareholders who contributed capital post-Paulson: the Debtor (50%), Prasil Family Matters, LLC (25%), Jon D. and Linda W. Gruber Trust (15%), and Mark E. Anderson MD APC PSP & T (10%). The total post-split shares outstanding remained 7,782,858 shares. The Debtor directly holds 2,728,204 post-split shares of VētaNova Inc. common stock (1,468,462 post-split base shares from the Olde Monmouth List plus 1,259,742 shares received through the redistribution of entity shares), representing approximately 35.05% of total post-split shares outstanding. All other shareholders' share counts are as reflected in the Olde Monmouth List and were not affected by the redistribution. VētaNova holds interests in the greenhouse and agricultural properties originally developed through the GrowCo enterprise. These interests include the Avondale greenhouse facility in Pueblo County, Colorado, and the Butte Valley agricultural property in Huerfano County, Colorado, together with water rights, water storage rights, greenhouse improvements, and related infrastructure. An Estimated Current Valuation ("ECV") of each shareholder's interest, based on the combined estimated value of VētaNova's real property collateral of approximately $54,900,000, is set forth as an Exhibit to this Disclosure Statement.

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

Amended Disclosure Statement ¶¶ 111-113 (docket #96 at 44-46).

Objections to the adequacy of the Amended Disclosure Statement were filed by the Commissioner (docket #101), Blue Yellow, LLC (docket #102, amended by docket #103), and the U.S. Trustee (docket #104). Common objections were that Mr. McKowen continued to conflate his assets and liabilities with those of his entities, such as GrowCo and VētaNova; that the Amended Disclosure Statement contemplated operations in direct contravention of the injunction contained in the State Court Judgment; that the Amended Disclosure Statement contained material misstatements and omissions; and that the Plan was patently unconfirmable.

Parties also asserted Mr. McKowen engaged in improper solicitation under 11 U.S.C. § 1125(b) when he sent an email to "Beneficial Owners" advising them they were required to file a proof of claim in his bankruptcy case to preserve their interests under the 404224 Deed of Trust. Approximately 17 Beneficial Owners did file proofs of claim,[12] and some participated in the hearing before this Court on the adequacy of the Amended Disclosure Statement. The Beneficial Owners attached to their proofs of claim an Amended Resolution of the Board of Directors of VētaNova dated March 27, 2026. The Amended Resolution, signed by Mr. McKowen as "Sole Director, Chief Executive Officer, and President," stated VētaNova owned 90% of the beneficial interest listed on one of the Deeds of Trust granted by F-2 and Orlando as part of the GrowCo Fundraising, and it assigned to each Beneficiary their proportional share in VētaNova's beneficial interest in the Deed of Trust. The Amended Resolution provided, in relevant part, as follows:

> WHEREAS, [Mr. McKowen's] Amended Combined Disclosure Statement and Plan of Reorganization proposes to classify the Beneficiaries' secured

---

[12] Wayne Harding filed proof of claim number 7, amended by proof of claim number 7-2, in the amount of $93,212.00, secured by the 404224 Deed of Trust; Thomas Prasil filed proof of claim number 8, in the amount of $6,321,176.00, secured by the 404224 Deed of Trust; Mark E. Anderson filed proof of claim number 9, in the amount of $1,650,801.00, secured by the 404224 Deed of Trust; MFFI LLC filed proof of claim number 10, in the amount of $112,891.00, secured by the 404224 Deed of Trust; the Michael & Linda Harnish Revocable Trust filed proof of claim number 11, amended by proof of claim number 11-2, in the amount of $101,260.00, secured by the 404224 Deed of Trust; Michael McCullough filed proof of claim number 13, in the amount of $138,176.00, secured by the 404224 Deed of Trust; Joseph McKowen filed proof of claim number 14, amended by proof of claim number 14-2, in the amount of $77,323.00, secured by the 404224 Deed of Trust; Terry Gruber filed proof of claim number 15, in the amount of $44,696.00, secured by the 404224 Deed of Trust; George McCaffrey filed proof of claim number 16, in the amount of $1,533,676.00, secured by the 404224 Deed of Trust; Jon D & Linda w Gruber Trust filed proof of claim number 17, in the amount of $4,066,584.00, secured by the 404224 Deed of Trust; Michael Harnish IRA Resources filed proof of claim number 18, amended by proof of claim number 18-2, in the amount of $182,039.00, secured by the 404224 Deed of Trust; Russell John Coppock filed proof of claim number 20, in the amount of $284,480.00, secured by the 404224 Deed of Trust; Richard R. Kwesell filed proofs of claim numbers 21 and 22, in the amount of $3,311,592.00, secured by the 404224 Deed of Trust; William Reeb filed proof of claim number 23, in the amount of $30,401.00, secured by the 404224 Deed of Trust; Laura McKowen filed proof of claim number 25, in the amount of $77,323.00, secured by the 404224 Deed of Trust; Louise A. Lowe filed proof of claim number 26, in the amount of $487,680.00, secured by the 404224 Deed of Trust; and George Joseph Rosch filed proof of claim number 27, in the amount of $12,664.00, secured by the 404224 Deed of Trust.

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

interests as Class 3B and to treat those interests through a 6% Collateralized Bond exchange issued pursuant to 11 U.S.C. § 1145(a);

WHEREAS, the Board has determined that each Beneficiary should be able to file an individual Proof of Claim in [Mr. McKowen's] Bankruptcy Case asserting their Paulson-preserved collection rights and their status as a named beneficiary under DoT 404224, without being required to retain legal counsel as a precondition to participation;

WHEREAS, to enable individual filing, VētaNova must assign to each Beneficiary their proportional share of the Company's beneficial interest under DoT 404224, so that each Beneficiary holds a direct secured interest that can be independently asserted in [Mr. McKowen's] Bankruptcy Case;

. . . .

NOW, THEREFORE, BE IT RESOLVED, . . . .

. . . .

Effective immediately upon adoption of this Resolution, VētaNova hereby pledges and grants a lien on the properties securing the conveyances under DoT 404224 – specifically, the Avondale greenhouse facility (Pueblo County, Colorado), and the Butte Valley agricultural property including Orlando Reservoir No. 2 (Huerfano County, Colorado) – to secure the 6% Collateralized Bonds to be issued under the Plan pursuant to 11 U.S.C. § 1145(a) and to secure the beneficial interests assigned to the Beneficiaries under Resolution 1. This Resolution shall constitute the operative authorization for such pledge without the requirement of any further corporate action. The combined estimated value of the pledged properties is approximately $54,900,000, based on the Lone Pine Appraisals (March 2022) for Avondale and the updated senior water rights valuation at current market comparables for Orlando/Butte Valley. The Chief Executive Officer is authorized to execute all documents necessary to record and perfect this pledge, including deeds of trust, security agreements, and UCC financing statements.

. . . .

Amended Resolution attached to Proof of Claim 7-2. The Amended Resolution purported to grant the following rights:

Each Beneficiary identified in Exhibit 8 to DoT 404224 and the ECV Schedule shall have the absolute and unconditional right to file an individual proof of claim in Case No. 25-16665-KHT, asserting: (a) their status as a named beneficiary under DoT 404224 as identified in Exhibit 8; (b) their

11

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

Paulson-preserved collection rights under the GrowCo securities; and (c) their direct beneficial interest as assigned by this Resolution. No Beneficiary shall be required to retain legal counsel as a precondition to filing a Proof of Claim. This right is self-executing and requires no further corporate action by VētaNova.

*Id.*

The State of Colorado investigated Mr. McKowen's activities, including his communications with the Beneficial Owners. The Commissioner asked the State Court to find Mr. McKowen's activities – including filing documents in this Court providing for the issuance of securities and contacting current and potential investors about those securities – violated the injunction contained in the State Court Judgment. Mr. McKowen asked this Court to stop the investigation and further proceedings in the State Court Case. This Court denied Mr. McKowen's requests for relief (docket #116; docket #4 in adversary proceeding no. 26-01111-KHT).

In his responses to the Objections to the adequacy of the Amended Disclosure Statement (docket ##105, 106, 107, 109), Mr. McKowen argued he (in his capacity as Chapter 11 debtor) did not improperly solicit acceptance of a plan; instead, he (in his capacity as VētaNova Sole Director, Chief Executive Officer, and President) simply passed along information.[13] Mr. McKowen also argued 11 U.S.C. § 1145(a) preempts applicable law requiring registration of securities.[14]

Mr. McKowen asserts: "[T]he question before this Court is one of property rights: whether the Debtor's secured interests under Deed of Trust No. 404224 and the Paulson-preserved collection of rights of over eighty percent of GrowCo investors constitute property of the estate entitled to protection under 11 U.S.C. § 541." *See, e.g.*, docket #107, at 3. The Court cannot agree. Mr. McKowen has not shown he, individually, owns secured interests under the 404224 Deed of Trust or other claims or assets belonging to others, including GrowCo, VētaNova, and their investors. Interests owned by others are not part of Mr. McKowen's bankruptcy estate and cannot not be administered in this case. The actual question before this Court is whether the Disclosure Statement, as amended, contains adequate information as required by the Bankruptcy Code, and if the Court cannot so find, whether Mr. McKowen's bankruptcy case should proceed.

## II.   APPLICABLE LAW

Section 1125(b)[15] requires debtors to obtain approval of a disclosure statement

---

[13] Mr. McKowen has not shown the Bankruptcy Code or the State Court Judgment allows the actions he took in either role.

[14] That may be so, but any exemption would apply to registration requirements only and would not allow someone to otherwise violate securities laws by making false or misleading statements in connection with the sale, nor would it allow the sale of securities by someone specifically prohibited from doing so.

[15] References to "section" are to those of the Bankruptcy Code, 11 U.S.C., unless otherwise indicated.

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

before soliciting acceptance of a Chapter 11 plan. The Court must find the disclosure statement contains "adequate information," defined as follows:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan[.]

11 U.S.C. § 1125.

In deciding whether information is "adequate," courts have considered whether the following information is disclosed:

1. The circumstances that gave rise to the filing of the bankruptcy petition;
2. A complete description of the available assets and their value;
3. The anticipated future of the debtor;
4. The source of the information provided in the disclosure statement;
5. A disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;
6. The condition and performance of the debtor while in Chapter 11;
7. Information regarding claims against the estate;
8. A liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;
9. The accounting and valuation methods used to produce the financial information in the disclosure statement;
10. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;
11. A summary of the plan of reorganization;
12. An estimate of all administrative expenses, including attorneys' fees and accountants' fees;
13. The collectibility of any accounts receivable;
14. Any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;
15. Information relevant to the risks being taken by the creditors and interest holders;
16. The actual or projected value that can be obtained from avoidable transfers;
17. The existence, likelihood and possible success of non-bankruptcy litigation;

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

18.    The tax consequences of the plan; and

19.    The relationship of the debtor with affiliates.

*In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bkrtcy. S.D. Ohio 1988), *cited in* 4 Norton Bankr. L. & Prac. 3d § 110:5. Disclosure of all the above-listed information is not necessary in every case. Conversely, the list is not exhaustive, and the above-listed information may not be sufficient to provide adequate information, depending on the facts of the case. *Id.* at 171.

Information that contains falsehoods or mischaracterizations violates § 1125. *In re Gulph Woods Corp.*, 83 B.R. 339, 342-43 (Bankr. E.D. Pa. 1988).[16]

Typically, the adequacy of a disclosure statement is considered separately from the issue of plan confirmation. "Courts have long held, however, that 'if it appears there is a defect that makes a plan inherently or patently unconfirmable, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing.'" *In re K Lunde, LLC*, 513 B.R. 587, 590 (Bankr. D. Colo. 2014) (quoting *In re Larsen*, 2011 WL 1671538, at *2 n. 7 (Bankr. D. Idaho May 3, 2011)).

## III.    DISCUSSION

The Court will discuss the issues raised at the hearing, including (a) whether the Disclosure Statement, the Disclosure Statement Supplement, and Amended Disclosure Statement contain adequate information, considering the applicable *Scioto Valley Mortgage Co.* factors; (b) whether the Disclosure Statement, the Disclosure Statement Supplement, Amended Disclosure Statement, and other documents filed with this Court contain falsehoods or mischaracterizations; (c) whether the Plan is patently unconfirmable; and (d) if so, whether Mr. McKowen's bankruptcy case should proceed.

### A.    Adequacy of Information.

The Court considers whether the Disclosure Statement, the Disclosure Statement Supplement, and Amended Disclosure Statement, taken together, provide adequate information to allow a hypothetical investor to make an informed judgment about Mr. McKowen's plan. The following *Scioto Valley Mortgage Co.* factors are relevant: (1) the circumstances that gave rise to the filing of the bankruptcy petition; (2) a complete description of the available assets and their value; (3) Mr. McKowen's anticipated future; (4) information regarding claims against the estate; (5) information regarding the future management of Mr. McKowen's businesses, including the amount of compensation to be paid to Mr. McKowen; (6) information relevant to the risks being taken by the creditors and interest holders; (7) the existence, likelihood and possible success of non-bankruptcy litigation; and (8) the relationship of Mr. McKowen with his entities and their affiliates. The

---

[16] The *Gulph Woods* case addressed creditor communications that were not contained in a disclosure statement, but its holding that falsehoods or mischaracterizations violate § 1125 is relevant to the matter before the Court, as discussed further below.

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

Court will discuss each in turn.

First, Mr. McKowen has set forth some circumstances that gave rise to the filing of his bankruptcy petition, although his recitation is slanted in his favor. He did not make clear that a substantial factor giving rise to his bankruptcy filing was the entry of the State Court Judgment containing the injunctive relief prohibiting him from participating in any private securities transactions in or from the state of Colorado for twenty years. This information is important to allow a hypothetical investor to make an informed judgment about the plan, and without it, the Court cannot find the disclosure to be adequate.

Second, the Court considers whether Mr. McKowen has provided a complete description of the available assets and their value. The Court cannot so find. As discussed further below, Mr. McKowen characterized his assets differently at different times in this case. Mr. McKowen amended his Schedule A/B at different times throughout the case, giving different answers to the question of whether he owned an interest in real property.[17] *Compare* docket #1, at 29-30; docket #35, at 1-2; docket #40, at 9; docket #88, at 17-18. Mr. McKowen has not shown he, individually, owns the real properties listed, all of which are owned by entities, some of which Mr. McKowen does not control. Further, Mr. McKowen has not shown he, individually, owns secured interests under the 404224 Deed of Trust or the 404225 Deed of Trust. Finally, to the extent the interests Mr. McKowen asserts are junior to other interests, the lien position should be noted and, if appropriate, the valuation adjusted. The Court cannot find Mr. McKowen has made adequate disclosure of his assets or their value.

Third, the Court considers whether Mr. McKowen has provided sufficient disclosure of his anticipated future. Mr. McKowen has not made clear the extent to which he will be employed and compensated by VētaNova or the entity to be reverse-merged into VētaNova. Further, Mr. McKowen has not made clear how he will be able to participate in any fundraising activity of VētaNova or its Partner without violating the injunction contained in the State Court Judgment. The Court cannot find Mr. McKowen has made adequate disclosure of his anticipated future.

Fourth, the Court considers whether Mr. McKowen has provided sufficient information regarding claims against the estate. The Court finds he has not. He asserted claims that do not exist, such as the alleged claims of the Beneficial Owners, as discussed more fully below. And, he minimized claims that do exist, such as the judgments entered against him in favor of the Commissioner and in favor of Blue Yellow, LLC. The Court cannot find Mr. McKowen has made adequate disclosure of information regarding claims against the estate.

Fifth, the Court considers whether Mr. McKowen has provided sufficient information regarding the future management of his businesses, including the amount of compensation to be paid to Mr. McKowen. Similar to the third factor discussed above,

---

[17] While it may be appropriate to give Mr. McKowen some leeway when he makes legal arguments, it is not appropriate to give Mr. McKowen leeway when he makes factual statements, particularly when those factual statements are made under penalty of perjury.

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

Mr. McKowen has not made clear the extent to which he will be employed and compensated by VētaNova or the entity to be reverse-merged into VētaNova. Further, Mr. McKowen has not made clear how he will be able to participate in any fundraising activity of VētaNova or its Partner without violating the injunction contained in the State Court Judgment. Finally, Mr. McKowen has not made clear whether he will continue to operate any of his businesses, and if he does not, who will. The Court cannot find Mr. McKowen has made adequate disclosure of the future management of his businesses.

Sixth, the Court considers whether Mr. McKowen has disclosed sufficient information relevant to the risks being taken by the creditors and interest holders. Here, Mr. McKowen's disclosure is woefully inadequate. Mr. McKowen's plan involves the pursuit of litigation claims that have a substantial risk of non-success. Mr. McKowen's plan also involves the development of greenhouses, an industry in which Mr. McKowen's companies previously experienced a lack of success. And, Mr. McKowen's plan would require the Beneficial Owners who already paid a McKowen-managed entity at least once to acquire interests in the 404224 Deed of Trust or the 404225 Deed of Trust to pay again for the same interests or, more accurately, for lesser versions of those interests, which may or may not have been validly transferred among various parties and entities, as discussed further below. Finally, there is a substantial risk Mr. McKowen may not be able to accomplish any fundraising, given the injunctive relief contained in the State Court Judgment. Mr. McKowen's plan is extremely high-risk, and he did not sufficiently disclose the risks to creditors and to his potential interest holders.

Seventh, the Court considers whether Mr. McKowen has disclosed sufficient information regarding the existence, likelihood and possible success of non-bankruptcy litigation. As noted above, he has not. He has not acknowledged adverse rulings already entered against him by the State Court and the U.S. District Court. He has not accurately represented his likelihood of success in pursuit of his litigation claims. The theories he has described to this Court are implausible. The Court finds Mr. McKowen has not made adequate disclosure in this area.

Eighth, the Court considers whether Mr. McKowen has disclosed sufficient information regarding his relationship with his entities and their affiliates. The Court cannot so find. Mr. McKowen has blurred distinctions between and among corporate assets, corporate investors or shareholders' rights, and individuals' rights. He argues assets currently or formerly owned by companies he controlled are equally owned by those companies' shareholders and also by himself, individually. That is not accurate. Mr. McKowen has not provided adequate information regarding his relationship with his entities and their affiliates.

In conclusion, considering all the relevant circumstances of this case, Mr. McKowen's Disclosure Statement, the Disclosure Statement Supplement, and Amended Disclosure Statement, taken together, do not provide adequate information to allow a hypothetical investor to make an informed judgment about Mr. McKowen's plan. The Court will therefore deny approval of each.

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

## B.      Falsehoods or Mischaracterizations.

Separate from the issue of whether the Disclosure Statement, the Disclosure Statement Supplement, and Amended Disclosure Statement, taken together, provide sufficient information to hypothetical investors, the Court also considers the falsehoods and mischaracterizations contained in filings Mr. McKowen has made with this Court.

First, Mr. McKowen has described real property and water rights in Pueblo, Huerfano, and El Paso Counties in different ways at different times in this bankruptcy case. When he first filed his Schedule A/B, Mr. McKowen stated he owned the real property and water rights. *See* docket #1, at 29-30. When he filed Amended Schedules on December 10, Mr. McKowen did not include the real property and water rights in Pueblo, Huerfano, and El Paso Counties, changing the answer to the question "Do you own or have any legal or equitable interest in any residence, building, land, or similar property?" to "No." *See* docket #40, at 9. But, when he amended his schedules again on March 2, he changed the answer back to "yes," listing real estate in Pueblo, Huerfano, and El Paso Counties, but acknowledging he did not "presently hold a recorded fee title." *See* docket #88, at 17-18.

The truth is Mr. McKowen, individually, does not now have and has not ever had an ownership interest in the real properties or water rights, all of which are held in the name of corporate entities, most of which Mr. McKowen does not control. Mr. McKowen may have a concept for acquiring an ownership interest in the real properties (individually or, more likely, through one or more entities), but, that concept is far from materialized. As to the properties owned by F-2 and Orlando, acquiring ownership would require a foreclosure action that has not been commenced and, *a fortiori*, has not been successful. The pursuit of a foreclosure action would involve risks. For example, the Deeds of Trust may be found to be invalid or not properly assigned to those bringing the foreclosure action; the Deeds of Trust may not have priority over other liens on the properties, in which case, the foreclosure would not extinguish the superior property interests; the applicable statute of limitations to bring claims to enforce contract or foreclosure rights may have expired; and equitable defenses may exist.[18] When Mr. McKowen made statements to the effect that he had an ownership interest in the real properties, he made untrue statements. When Mr. McKowen made statements describing a plan by which he or his entities could obtain an ownership interest in the properties, but failed to explain how that plan would be accomplished and failed to disclose associated risks, he made misleading statements. Given these untrue and misleading statements regarding ownership of real property and water rights, the Court cannot find Mr. McKowen has provided "adequate information" in his Disclosure Statement, as Amended.

Second, Mr. McKowen has made conflicting and misleading statements about the ownership of the beneficial interests set forth on the 404224 Deed of Trust and the 404225

---

[18] The Court provides these examples for discussion purposes. The Court does not make any findings as to the existence or validity of any claim or defense.

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

Deed of Trust:

- Regarding the 404224 Deed of Trust, Mr. McKowen stated the beneficiary interests set forth therein were transferred from GrowCo Partners 1, LLC, to VitaNova. (docket #88, at 28; docket #28, at 5-6). But, the Exchange Agreement attached as Exhibit 3 to docket #28 provides for an exchange of Mr. McKowen's stock in GCP Super Units, LLC and McGrow, LLC to VitaNova. (docket #28, at 54-62). Transferring ownership of a company's stock is not the same as transferring ownership of that company's assets. The Exchange Agreement does not provide for a transfer of assets to VitaNova. Transferring stock in GCP Super Units, LLC and McGrow, LLC to VitaNova did not accomplish a transfer of GrowCo Partners 1, LLC's rights to VitaNova. Mr. McKowen has not otherwise shown GrowCo Partners 1, LLC's rights under the 404224 Deed of Trust were transferred to VitaNova. Without further documentation and explanation, Mr. McKowen's statements regarding the transfer of the beneficiary interests set forth in the 404224 Deed of Trust to VitaNova are, at a minimum, misleading.

- Regarding the 404225 Deed of Trust, Mr. McKowen stated his beneficiary interests under the 404255 Deed of Trust "arose through his secured positions in GCP Super Units LLC ("GCP-SU") and McGrow, LLC." (docket #28, at 5). But, the 404255 Deed of Trust names seventeen specific beneficiaries, not one of which is Mr. McKowen, GrowCo, any GrowCo Entities, GCP Super Units, LLC, or McGrow, LLC. Mr. McKowen has not otherwise shown any named beneficiary's rights under the 404225 Deed of Trust were transferred to VitaNova. Without further documentation and explanation, Mr. McKowen's statements regarding the transfer of the beneficiary interests set forth in the 404225 Deed of Trust to VitaNova are, at a minimum, misleading.

- Regarding the transfer from VitaNova to Mr. McKowen, Mr. McKowen stated upon VitaNova's dissolution, its assets were distributed in-kind to Mr. McKowen, individually. (docket #28, at 6; docket #88, at 28). The validity of any such distribution is unclear. The distribution was made November 30, 2024, pursuant to a Declaration of Dissolution and Distribution of Assets representing VitaNova had "fully completed the settlement of all known debts, liabilities, and obligations, leaving no outstanding claims against the Company" (docket #28 at 206). But, as of December 8, 2022, the State Court had entered default against VitaNova, GrowCo and the GrowCo Entities, GCP Super Units, LLC, and McGrow, LLC in the State Court Case. Also, as noted above, Mr. McKowen has not shown the beneficiary interests set forth in the 404225 Deed of Trust were transferred to VitaNova. Without further documentation and explanation, Mr. McKowen's statements regarding the transfer of the beneficiary interests set forth in the 404224 Deed of Trust and the 404225 Deed of Trust from VitaNova to

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

Mr. McKowen, individually are, at a minimum, misleading.

- Regarding current ownership of the beneficiary interests set forth in the 404224 Deed of Trust and the 404225 Deed of Trust, Mr. McKowen has asserted he retained possession of the interests. *See* docket #28, at 199 ("This exhibit documents the dissolution of VitaNova Partners LLC and the inkind distribution of all Beneficiary Interests under Deeds of Trust 404224 and 404225 to John R. McKowen as the sole member. It confirms the complete chain of title and the Debtor's personal ownership of these secured interests, now included in the Chapter 11 estate."). But, in a Distribution Agreement dated November 30, 2024 (docket #28, at 210), Mr. McKowen purportedly distributed the beneficiary interests to shareholders of VetaNova, Inc.[19] And, in the Amended Resolution of the Board of Directors of VētaNova attached to the proofs of claim filed by Beneficial Owners, Mr. McKowen states: "VētaNova holds approximately 90% of the beneficial interest under the Deed of Trust recorded as Reception No. 204224 in Huerfano County, Colorado ("DoT 404224")." Mr. McKowen's statements regarding current ownership of the beneficiary interests set forth in the 404224 Deed of Trust and the 404225 Deed of Trust are inconsistent. They cannot all be true. Without further documentation and explanation, the statements are, at a minimum, misleading.

The ownership of the beneficial interests set forth on the 404224 Deed of Trust and the 404225 Deed of Trust is not clear. The interests appear to have been conveyed many times over, each time to different parties, with or without consideration, perhaps in violation of applicable legal requirements. Mr. McKowen has not shown he, individually, owns any of the beneficial interests. The Court cannot find the beneficial interests are property of his bankruptcy estate. Thus, the Court cannot find the Amended Disclosure Statement, which proclaims the beneficial interests to be property of Mr. McKowen's bankruptcy estate, provides accurate information.

Third, when Mr. McKowen first filed his plan, it contained no details. In docket #60, Mr. McKowen stated the plan would be funded by "Plan Bonds," described as "6% Secured Convertible Bonds intended to be issued by VetaNova Inc." In the Amended Disclosure Statement, Mr. McKowen set forth his plan to distribute the Plan Bonds to the Beneficial Owners who file proofs of claim in his case, surrender their VētaNova shares, and contribute additional cash. In docket #79, Mr. McKowen stated the Plan Bonds would not be offered or sold in Colorado. But, Mr. McKowen is located in Colorado, and some of the Beneficial Owners who filed proofs of claim are located in Colorado. Ultimately, whether Mr. McKowen's conduct or proposed conduct violates the injunction contained in the State Court Judgment is a matter for the State Court to decide. But, this Court cannot

---

[19] No VetaNova, Inc. shareholders are listed in the Distribution Agreement, and no party other than Mr. McKowen signed the Distribution Agreement. But, in other pleadings filed with this Court and the U.S. District Court, Mr. McKowen has maintained VetaNova shareholders are each entitled to enforce the beneficiary interests (docket #28, at 200-59).

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

find Mr. McKowen has fully and accurately represented his obligations under the State Court Judgment and his present and future compliance with the injunction.

Finally, the Beneficial Owners, whom Mr. McKowen directed to file proofs of claim in his bankruptcy case in order to participate in his plan, have been misled. The Amended Resolution Mr. McKowen signed as VētaNova's Sole Director, Chief Executive Officer, and President appears invalid on its face. VētaNova cannot grant rights that are not its rights, nor can it create rights that do not otherwise exist. It cannot grant a lien on properties it does not own. It cannot grant parties or entities who are not Mr. McKowen's pre-petition creditors the right to file a proof of claim and participate in distributions alongside the creditors listed in Mr. McKowen's bankruptcy case. Mr. McKowen's explanation that he could not have previously listed individual Beneficial Owners as his creditors because they did not have counsel to represent them (docket #107, at 9), is preposterous.[20] To the extent any interest holder was required to have counsel to participate in proceedings before this Court, neither Mr. McKowen nor VētaNova can waive that requirement by resolution or otherwise. Each proof of claim filed by a Beneficial Owner is improperly filed in this case and is deemed struck.[21] No Beneficial Owner is a creditor entitled to participate in proceedings currently before this Court. In attempting to create a class of creditors consisting of the Beneficial Owners, Mr. McKowen violated the letter and the spirit of the Bankruptcy Code.

Mr. McKowen has provided current creditors, potential investors, and this Court information that contains falsehoods and/or mischaracterizations. He has not complied with § 1125. His Disclosure Statement, Disclosure Statement Supplement, and Amended Disclosure Statement cannot be approved.

### C.      Patently Unconfirmable Plan.

A plan is "patently unconfirmable where (1) confirmation 'defects [cannot] be overcome by creditor voting results' and (2) those defects 'concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing.'" *In re K Lunde, LLC*, 513 B.R. at 590 (quoting *In re Am. Capital Equip., LLC*, 688 F.3d 145, 154-55 (3rd Cir. 2012)). Here, it is undisputed Mr. McKowen's most recently-proposed plan provides for the issuance of Plan Bonds to the Beneficial Owners, who are to be treated as Mr. McKowen's creditors. There is no genuine issue of material fact as to whether the Beneficial Owners are creditors of Mr. McKowen, individually. They are not. This is a defect that cannot be overcome by creditor voting results. The recently-proposed plan is patently unconfirmable.

---

[20] If Mr. McKowen actually believed the Amended Resolution cleared prior impediments and made the Beneficial Owners his creditors, then upon its execution he would have filed an amended Schedule E/F listing those creditors. It is telling that he did not do so.

[21] Filing a fraudulent proof of claim is punishable by fines of up to $500,000, imprisonment for up to 5 years, or both, under 18 U.S.C. §§ 152, 157, and 3571. Whether Mr. McKowen or any Beneficial Owner violated federal law in connection with the proofs of claim filed with this Court is beyond the scope of the matter currently before the Court, and the Court does not now make any such finding.

Further, each plan Mr. McKowen has filed, proposed, or described to this Court is patently unconfirmable. Under § 1129(a)(3), a court may confirm a Chapter 11 plan only if it "has been proposed in good faith and not by means forbidden by law." A fellow Judge of this Court has explained the requirement as follows:

The Bankruptcy Code does not define the flexible concept of "good faith." However, the Tenth Circuit has twice endorsed the following standard:

> The test of good faith is met if there is a reasonable likelihood that the plan will achieve its intended results which are consistent with the purposes of the Bankruptcy Code, that is, is the plan feasible, practical, and would it enable the company to continue its business and pay its debts in accordance with the plan provisions.

[*Search Mkt. Direct, Inc. v. Jubber (In re Paige)*, 685 F.3d 1160, 1178 (10th Cir. 2012)] (quoting *Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.)*, 779 F.2d 1456, 1459 (10th Cir. 1985)). In assessing good faith, "courts have looked to whether the debtor intended to abuse the judicial process and the purposes of the reorganization provisions." *Paige*, 685 F.3d at 1179; *Pikes Peak Water*, 779 F.2d at 1460. A standard such as "good faith" requires a court to assess the "totality of the circumstances." [*CRE/ADC Venture 2013, LLC v. Rocky Mountain Land Co., LLC (In re Rocky Mountain Land Co., LLC)*, 2014 WL 1338292, at *9 (Bankr. D. Colo. Apr. 3, 2014)]. Put another way, in addition to assessing technical compliance with the Bankruptcy Code and feasibility, the Court also should consider "whether a plan is proposed with honesty and sincerity" and "whether a plan's terms or the process used to seek its confirmation was fundamentally fair." *In re Riviera Drilling*, 2012 WL 6719591, at *5 (Bankr. D. Colo. Dec. 12, 2012) (citing *In re Global Water Techs., Inc.*, 311 B.R. 896, 903 (Bankr. D. Colo. 2004)).

*In re Saratoga and North Creek Railway, LLC*, 635 B.R. 581, 607 (Bankr. D. Colo. 2022). The Court cannot find any plan Mr. McKowen has filed or described meets that standard. Each plan is not feasible, a requirement intended "to prevent confirmation of visionary schemes which [promise] creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation" *Id.* at 607-08 (quoting *Pikes Peak Water*, 779 F.2d at 1460 (further quotation omitted)). Each plan is, at best, a visionary scheme that promises creditors (those of Mr. McKowen and/or those of his entities) more than he (or his entities) could possibly provide. As discussed above, Mr. McKowen has not communicated with honesty and sincerity with this Court, his creditors, and those who are not his creditors. It is clear Mr. McKowen is attempting to use this bankruptcy case to avoid complying with his obligations under the State Court Judgment, particularly the injunctive relief, using Code sections including § 1145(a) as a

shield.[22] The Bankruptcy Code does not shield unlawful behavior. Mr. McKowen's plans constitute an abuse of the judicial process.

### D.   Case Resolution.

As discussed above, Mr. McKowen's Disclosure Statement, as amended, cannot be approved. His plans are patently unconfirmable. Given Mr. McKowen's *pro se* status, the Court has given him leeway and has allowed him multiple opportunities to correct the misstatements, omissions, and other deficiencies in the documents he has filed with this Court. And, the Court has repeatedly warned Mr. McKowen that failure to correct the misstatements, omissions, and other deficiencies could result in dismissal of his case. At this time, the Court must consider dismissal.

Mr. McKowen has been a Chapter 11 debtor for almost seven months. During those seven months, he has attempted to hold his creditors and the State of Colorado at bay while engaging in activities that do not comply with the Bankruptcy Code and may not comply with the State Court Judgment. He is no closer to a confirmed plan than he was on the day he first filed this bankruptcy case. In fact, he may be farther away, given his postpetition actions, particularly as to the Beneficial Owners.

"[W]ithout movement toward a confirmable plan, protection of the automatic stay within the comfort of chapter 11 is not warranted and demonstrates bad faith." *In re Chicago S. Loop Hotel Owner, LLC*, No. 25-12829, 2026 WL 690868, at *5 (Bankr. N.D. Ill. Mar. 10, 2026); *see also In re Jacobs*, 644 B.R. 883, 893 (Bankr. D.N.M. 2022), *aff'd*, No. CIV 23-0077 JB/JFR, 2024 WL 2795800 (D.N.M. May 31, 2024) ("Though not specifically enumerated in [11 U.S.C. § 1112(b)], 'cause' for dismissal or conversion includes a debtor's bad faith in filing or prosecuting a chapter 11 case.") (citing cases). Here, the Court finds Mr. McKowen's actions, including inability to confirm a plan and specifically including the falsehoods and mischaracterizations set forth above, constitute cause for dismissal under § 1112(b).[23]

Once cause has been determined, this Court is required to convert Mr. McKowen's case to one under Chapter 7 or dismiss it, "whichever is in the best interests of creditors and the estate, . . . unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." § 1112(b)(1). Here, creditors and parties in interest have expressed a preference for dismissal, rather than conversion. And, it appears to the Court that little to no assets would be available for distribution to Mr. McKowen's creditors in a Chapter 7 case. The Court

---

[22] *See* Adversary Complaint (docket #117) ¶¶ 5, 18.

[23] Although several parties requested dismissal of Mr. McKowen's case, no separate motion to dismiss was before the Court at the time of the hearing. Nevertheless, § 105(a) allows the Court to raise the issue *sua sponte*. *See, e.g., Finney v. Smith (In re Finney)*, 992 F.2d 43, 45 (4th Cir.1993) ("A bankruptcy court may act under § 1112(b) on the motion of a party in interest or *sua sponte* as 'necessary and appropriate' under § 105.") (citation omitted).

ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT
AND DISMISSING BANKRUPTCY CASE
Case No. 25-16665 KHT

therefore finds dismissal, rather than conversion, is in the best interests of creditors and the estate. The Court cannot find appointment of a trustee or examiner is appropriate.

## IV.    CONCLUSION

For the reasons discussed above, the Court finds Disclosure Statement, the Disclosure Statement Supplement, and Amended Disclosure Statement do not contain adequate information within § 1125 and cannot be approved. The Court finds each plan Mr. McKowen has proposed or described to the Court is patently unconfirmable. The Court finds cause for dismissal under § 1112(b), and dismissal, rather than conversion, is in the best interests of creditors and the estate. The Court will therefore enter a separate judgment dismissing the above-captioned case.

Accordingly, it is

HEREBY ORDERED that approval of the Disclosure Statement, the Disclosure Statement Supplement, and Amended Disclosure Statement is DENIED. It is

FURTHER ORDERED that the above-captioned case will be DISMISSED by separate judgment.

Dated May 11, 2026                                      BY THE COURT:

Kimberley H. Tyson
United States Bankruptcy Judge

23